Frank MISTRETTA et al., Plaintiffs,

Frank Alden et al., Plaintiffs–Appellees,

v.

SANDIA CORPORATION,
Defendant–Appellant,

Equal Employment Opportunity
Commission, Intervenor.

Charles PUGLISI, Plaintiff,
Cross–Appellant,

v.

SANDIA CORPORATION, Defendant,
Cross–Appellee,

Equal Employment Opportunity
Commission, Intervenor.

Nos. 79–1021, 79–1168 to 79–1181
and 79–1209.

United States Court of Appeals,
Tenth Circuit.

Oct. 21, 1980.

On Motion for Reconsideration
Dec. 1, 1980.

John M. Kulikowski, Albuquerque, N.M. (Robert H. Clark, of Keleher & McLeod, P. A., of Albuquerque, N.M., on the brief), for plaintiffs–appellees, cross–appellant.

Robert M. St. John (William A. Sloan, Bruce D. Hall, Victor R. Marshall and Kenneth J. Ferguson, of Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N.M., on the brief), for defendant–appellant, cross–appellee.

Kerry L. Adams, Washington, D.C. (James E. White, Regional Sol., Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Assoc. Sol., Lois G. Williams, Gregory O'Duden, Attys., U.S. Dept. of Labor, Washington, D.C., on the brief), for intervenor.

Before SETH, Chief Judge, and BARRETT and DOYLE.

WILLIAM E. DOYLE, Circuit Judge.

This cause is a consolidated appeal by Sandia Corporation from fifteen judgments entered in the United States District Court for the District of New Mexico in favor of former Sandia employees on December 27, 1978. One former employee, Puglisi, who was denied relief in the lower court has cross–appealed.

The case is procedurally complex. The matters considered here all arise under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623(a)(1), (2), (3).[1] The happenings are the outgrowth of a work force reduction which occurred at Sandia in the Spring of 1973, and which was triggered by a cutback in federal funding of Sandia's operations.

Five of the terminated employees brought two actions in the District Court in the Fall of 1975. Their allegations were that they had been terminated because of their ages, which ages were within the age perimeters of the Act. The cases were consolidated in the District Court, and were joined by more former employees of Sandia who took advantage of the provisions of 29 U.S.C. § 216, which allowed aggrieved persons to become parties by the filing of consents. Subsequently, on March 20, 1975, the Secretary of Labor filed a complaint in the same court on behalf of fourteen former employees whose employment at Sandia had been terminated in the reduction in force. Those persons also alleged illegal age discrimination. The result of these filings was a further consolidation in the district court cases. A distinction has been maintained throughout this action between the individual claimants represented by the Secretary of Labor and those parties to the individual actions. The plaintiffs–appellees here have been referred to as the "private plaintiffs", and it is their actions which are now being reviewed.

---

1. Section 623(a) provides:
 "It shall be unlawful for an employer—
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ages;

 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
 (3) to reduce the wage rate of any employee in order to comply with this chapter.

The consolidated cases were set for trial in two stages. The first stage, known as the "liability" phase, was tried to the court, Judge Edwin L. Mechem presiding, on January 19, 1977. It was continued through February 17, 1977. The second stage, known as the "remedial" phase, was divided so as to be tried separately on the Secretary of Labor's evidence and the private plaintiffs' evidence. This was on the assumption that the "liability" phase showed that the plaintiffs had established a *prima facie* case of illegal age discrimination. The trial court issued its Interlocutory Opinion on October 20, 1977. It held *inter alia* that a *prima facie* case of illegal discrimination had been shown based on age; that there existed a pattern or practice directed at portions of the protected class, employees between the ages of 52 and 64. The trial thereafter proceeded into the second phase of the case. This commenced on June 20, 1978 and continued through July 6, 1978, of the issues raised by the seventeen private plaintiffs. Pursuant to the Interlocutory Opinion, and in response to the prima facie case, Sandia went forward with the burden of presenting evidence in its defense. Its effort was to overcome the *prima facie* case. The plaintiffs went forward with the burden of showing that the reasons articulated by Sandia for their individual selection for termination were pretexts for unlawful discrimination.

On September 28, 1978, the trial court entered findings of fact and conclusions of law, and supplemental findings on December 14, 1978. Judgments in favor of fifteen of the private plaintiffs and against Sandia totaling $920,277.00, plus interest and attorney's fees, were entered on December 22, 1978, as was judgment in favor of Sandia on the claims of two of the private plaintiffs. These judgments were made final by order of the court on December 27, 1978.

The case filed by the Secretary of Labor commenced on October 24, 1978 and continued through November 2, 1978. It culminated in a judgment in favor of the Secretary on the claims of eleven of the fourteen former Sandia employees for money damages and injunctive relief. Our opinion in that case has been written and filed.

Sandia's appeals of all of the judgments rendered against it were consolidated in this Court for oral argument. During the pendency of the appeal the Equal Employment Opportunity Commission succeeded to the enforcement authority of the Secretary of Labor and succeeded the Secretary of Labor as a party to the appeal. We issued our opinion in the government's case on August 13, 1980, and denied a Petition for Rehearing after modifying the mandate on Sept. 4, 1980. *See Equal Employment Opportunity Commission v. Sandia Corporation,* 639 F.2d 600 (10th Cir. 1980). Our action in that case affirmed the district court on all issues raised by the appellant, Sandia, except the issue of an award of damages which did not allow the employer to offset severance pay, upon which issue the matter was reversed in part and remanded to the district court. The factual background of the instant case is identical to that set forth in pages 603 through 605 of our opinion in the *EEOC* case, 639 F.2d 600, as is a summary of the statistical and direct evidence upon which the trial court found and concluded that the plaintiffs in the "liability" phase had established a *prima facie* case. The latter is set forth at pages 605 through 615, 639 F.2d 600.

## THE POINTS RELIED ON

The arguments and contentions advanced by Sandia in the present appeal are summarized as follows; that the trial court erred in:

1. Finding that the evidence established a *prima facie* case that Sandia unlawfully discriminated against employees on the basis of age, and more specifically, the court erred in its consideration of the statistical evidence.

2. Interpreting the effect of the finding of a *prima facie* case that Sandia engaged in a pattern and practice of unlawful age discrimination as placing an invalid burden on Sandia in the remedial stage of the proceedings.

3. Finding that the evidence established a *prima facie* case of unlawful discrimination on the basis of age in connection with Sandia's adoption and use of an age–based system of granting salary increases, a practice which was known within the company as "stretch out."

4. Concluding that certain of the private plaintiffs satisfied the notice and deferral requirements of the Age Discrimination in Employment Act.

5. Finding that the alleged violations were in fact and in law willful.

6. Allowing damages to the private plaintiffs on the basis of the finding of discrimination in the adoption and maintenance of the stretch out policy.

Additionally, the cross–appeal of the private plaintiff Puglisi challenges the sufficiency of the evidence upon which his complaint against Sandia was dismissed.

### THE EFFECT OF OUR DECISION AND REASONING IN *EEOC v. SANDIA CORPORATION*

We have held in the basic companion case, *EEOC v. Sandia Corporation*, that the trial court property applied the applicable legal standards when it found and concluded that the private and government plaintiffs had established, at the "liability phase" of the proceeding, that Sandia engaged in a pattern and practice of unlawful discrimination on the basis of age; that this involved employes between the ages of 52 and 64. We held further that the trial court's findings were not only supported by the statistical evidence but by direct evidence, testimony and documents as well. We concluded that the weight attributed by the trial court to the rebuttal evidence adduced by Sandia in the "remedial phase" of the government's case on behalf of the claimants represented by the Secretary of Labor was not a clearly erroneous application of the established legal doctrines concerning the burden of proof in cases where a pattern and practice of unlawful discrimination on the basis of age is alleged.

The supporting evidence of the finding of a *prima facie* case of unlawful pattern and practice in the matter before us is the statistical and direct evidence adduced at the liability phase of the trial in January and February, 1977. This is fully set forth and discussed in our previous opinion, *EEOC v. Sandia Corporation, supra,* at pages 605 through 615, and 620 through 624. We need not repeat the presentation and comments here.

 The private plaintiffs do not raise any substantially new or different allegations of error which were not considered in the appeal of the government's judgment. We stated in the *EEOC* case that "we agree with the trial court's determination that Sandia failed to rebut the Secretary's *prima facie* case. We agree also with the trial court's determination that the plaintiffs had established by a preponderance of the evidence that Sandia had engaged in discriminatory conduct by selecting individuals in the 52 to 64 age range for layoff in the 1973 force reduction." *Id.* pp. 614, 615. Our opinion in that matter is sufficient to resolve contentions that the trial court did not err in its rulings which give rise to contentions number 1 and 2, above. We find also that the trial court did not err in its evaluation of the statistical and direct evidence or its interpretation of the effect of its finding of a *prima facie* case as it applied to Sandia's burden of proof at the subsequent trials.

 Our ruling in the *EEOC* case which deals with the stretch out system, the postponing of salary increases as a *prima facie* showing is fully applicable to the present case and it is, therefore, unnecessary to repeat that discussion. It disposes of proposition 3 in the above contentions. The stretch out policy will, however, be discussed in some detail below in connection with the question of damages flowing from the stretch out policy. No such damages were sought or awarded in the Secretary's or EEOC's action on behalf of the individual claimants. Stretch out was considered in the EEOC case on the liability issue.

## THE NOTICE AND DEFERRAL REQUIREMENTS OF THE ADEA

The threshold issues presented in the present case, the appeal of the judgments applicable to these private plaintiffs (and of the cross–appeal) is whether the notice requirements of §§ 7(d), (29 U.S.C. § 626(d)) and 14(b), (29 U.S.C. § 633(b)), have been sufficiently satisfied so as to sustain the judgments on behalf of the private plaintiffs who joined the action by filing of consents to become plaintiffs. Only the plaintiffs Mistretta and McCrory served formal notice of intent to sue Sandia on the Secretary of Labor. They also were the only plaintiffs who filed formal charges with the New Mexico Human Rights Commission. Such a notice of intention to bring suit against the employer, Sandia, is provided by § 7(d). The filing of charges with the appropriate state agency is provided by § 14(b). Sandia vigorously urges that the additional private plaintiffs here are therefore improper parties to the action.

■ The trial court has held that the consenting plaintiffs were proper parties because they were represented by the filing by Mistretta and McCrory of notice with the Secretary of Labor. The trial court relied on the reasoning in *Burgett v. Cudahy Company,* 361 F.Supp. 617 (D.Kansas, 1973), wherein the district court in Kansas held that it was not necessary for each of the plaintiffs to file notice if those who joined by consent were limited to the same issues which were raised by the representative party who did file such notice with the Secretary. It held, in addition, that the consent plaintiffs were not required to file

individual charges with the New Mexico Human Rights Commission,[2] as the charges filed by Mistretta and McCrory were timely filed and in form included "individually and on behalf of all others similarly situated."

During the pendency of this appeal the United States Supreme Court has held that the commencement of state proceedings in so–called deferral states is a jurisdictional requirement of the ADEA. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). The Supreme Court also held that the failure to satisfy such requirement within the time limits specified by state law does not bar a federal action which has already been commenced, but that such federal action "should be held in abeyance" so as to give the state agency the "opportunity to entertain respondent's grievance[.]" *Oscar Mayer & Co. v. Evans,* 441 U.S. 750 at 764, 99 S.Ct. 2066 at 2076, 60 L.Ed.2d 609.

Since the decision in *Oscar Mayer v. Evans,* the Ninth Circuit has decided the case of *Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir. 1979). In that case eleven former employees of Crocker National appealed the dismissal of their discrimination action following summary judgment for the employer on the ground of failure to serve timely notice of intent to sue and to commence state proceedings. The Ninth Circuit reversed the dismissal. On the issue of the failure of the appellant Bean to file a timely notice of his intent to sue with the Secretary of Labor, it reasoned that where employees consent to join the action which has been filed on behalf of similarly situated employees and a timely notice has been given for the group, individual notices need not be given.[3]

> "Bean contends that where at least one complainant, in the present case, Juanita Davenport, otherwise in compliance with the ADEA, timely files notice of intent to sue with the Secretary, that complainant may bring suit on behalf of 'similarly situated' employees who have consented to join the action under 29 U.S.C. § 216(b), even though such 'similarly situated' employees have not individually filed notice to sue pursuant to 29 U.S.C. § 626(d). Crocker responds that each complainant in an ADEA action must individually fulfill the

---

2. New Mexico is a "deferral state", a state which has a law prohibiting the unlawful employment practice alleged and which has established or authorized a state authority to grant or seek relief from such practice. See § 706(b) of Title VII, 42 U.S.C. § 2000e–5(c), and the New Mexico Human Rights Act, §§ 28–1–1, *et seq.,* N.M.S.A., 1978.

3. The Ninth Circuit's reasoning in *Bean v. Crocker National Bank, supra,* is in part as follows:

A fair reading of the *Oscar Mayer v. Evans* opinion suggests the same principles are applicable to the requirement of commencement of state action in deferral states.

"Congress has intended through § 706(b) to screen from the federal courts those problems of civil rights that could be settled to the satisfaction of the grievant in a 'voluntary and localized manner.' See 110 Cong. Record 12725 (June 4, 1964) (remarks of Sen. Humphrey). The section is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary resort to federal relief by victims of the discrimination. See *Voutsis v. Union Carbide Corporation*, 452 F.2d 889 (CA 2 1971). Because state agencies cannot even attempt to resolve discrimination complaints not brought to their attention, the section has been interpreted to require individuals in deferral states to resort to appropriate state proceedings before bringing suit under Title VII. *See Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Olson v. Rembrandt Printing Co.*,

511 F.2d 1228 (CA 8 1975)." *Oscar Mayer v. Evans*, 441 U.S. 750, at 754, 99 S.Ct. 2066, at 2071, 60 L.Ed.2d 609.

This court, in dealing with the Civil Rights Act, 42 U.S.C. § 2000a–3(c), has ruled that deferral remedies do not have to be exhausted, merely given the opportunity to employees to invoke their remedies. *See Harris v. Ericson*, 457 F.2d 765 (10th Cir. 1972); cf. *Barela v. United Nuclear Corp.*, 462 F.2d 149, 153 (10th Cir. 1972).

The trial court had an alternative justification for its ruling which was that the 300 day filing requirement was "subject to an equitable extension which would place the private plaintiffs on an equal footing with the Secretary of Labor." This "equitable tolling" doctrine in keeping with the congressional purpose of ADEA, was approved in *Dartt v. Shell Oil Company*, 539 F.2d 1256, 1261 (10th Cir. 1976); aff'd. 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270, reh. den. 434 U.S. 1942, 98 S.Ct. 785, 54 L.Ed.2d 792.

In the case before us, McCrory and Mistretta filed formal charges of unlawful discrimination together with affidavits, and a cover letter from their attorney which letter is addressed to the Secretary of La-

---

§ 626(d) requirements. The district court agreed with Crocker and dismissed Bean from the action.

We hold that the ADEA authorizes grievants who have complied with § 626(d) to bring representative actions pursuant to § 216(b) on behalf of 'similarly situated' employees, who may not have individually filed notice of intent to sue with the Secretary. Therefore, we reverse the decision of the district court dismissing Bean from the action.

In his concurring opinion in *Evans*, Mr. Justice Blackmun noted that the ADEA is 'a remedial statute that is to be liberally construed' and suggested that it should be read in such a manner as to 'give full recognition to that remedial character.' *Oscar Mayer & Co. v. Evans, supra*, concurring opinion, 441 U.S. at p. 764, 99 S.Ct. at p. 2076 (Blackmun, J.). The ADEA's broad remedial purposes of prohibiting arbitrary age discrimination and of promoting the employment of older persons based on their ability rather than age are best served by an interpretation of 29 U.S.C. § 216(b), that permits similarly situated complainants to join in an action as unnamed parties so long as a named plaintiff has complied with the notice requirements of 29 U.S.C. § 626(d)." 600 F.2d 758, 759.

In further strengthening the *Oscar Mayer* decision, the Ninth Circuit cited and discussed Title VII, the Civil Rights Act, as an analogy, 600 F.2d at 769. The Ninth Circuit also noted that the Supreme Court in *Oscar Mayer v. Evans*, had, in a footnote, preserved the rule of *Albermarle v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975), "concerning the rights of unnamed parties in plaintiff class actions," based upon the mentioned factors, together with the necessity of allowing the Secretary to promptly eliminate unlawful practices. The Ninth Circuit expressed the view that substantial notice rather than similar notice was the object, and that it had been satisfied in the case before it.

The conclusion of the Ninth Circuit was that the trial court's summary judgment on the ground of failure to give complete notice was error. The remand directed the trial court to hold the action in abeyance consistent with the *Oscar Mayer* decision. Inasmuch as there was no question before the court of appeals as to the appellant's failure to commence state action, the issue as to whether the same principles apply to commencement of state action by representation was not discussed.

bor; also filed was notice of a copy to the Human Rights Commission. The recipients were notified that the suit was intended to be a class action for all employees or former employees of Sandia who were between the ages of 40 and 65. The formal charges were alleged to have been filed for the individual complainants and all others similarly situated. The allegation was that Sandia's "arbitrary action constitutes age discrimination against workers over 40," a notice which notified the New Mexico Human Rights Commission so that it had opportunity to investigate and to act within the statutory time limitations. We concluded that it was adequate to satisfy the jurisdictional requirements of § 14(b).

## THE AWARD OF DOUBLE LIQUIDATED DAMAGES FOR "WILLFUL" VIOLATION OF THE ADEA

■ Sandia's second contention attacks the award of double damages, as "liquidated" damages. This is based upon the trial court's finding that the pattern and practice engaged in by Sandia was "willful" within the meaning of § 7(b) of the ADEA. The Fair Labor Standards Act is the enforcement means used by the ADEA. Unpaid back wages plus an "additional equal amount as liquidated damages" may be awarded to an employee, 29 U.S.C. § 216(b), where the finding is that the violation of the ADEA was willful. 29 U.S.C. § 626(b). If the employer succeeds in establishing a defense of good faith, the award of liquidated damages becomes a matter of trial court discretion. *Hays v. Republic Steel Corporation*, 531 F.2d 1307 (5th Cir. 1976).

■ Sandia's argument that the evidence was insufficient to support the finding of a willful violation is unsupported by the record. The evidence was more than substantial that Sandia acted in the face of the ADEA. They were fully aware that the Act was "in the picture." *Coleman v. Jiffy*

*June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971).

Sandia's review committees struggled with the problems of the impact of the force reduction on the protected class, but disregarded the problem when the adverse effects of the reduction was brought to their attention. Management was aware throughout the termination program that it was walking a tightrope, and that its actions might violate the Act. *Coleman v. Jiffy June Farms, supra*. Furthermore, Sandia's reliance upon any purported "blessing" of its policies by virtue of its following procedures which had, in 1970, been subjected to review by the Department of Labor will not suffice. There is nothing in the record which shows "approval" of the previously adopted procedures, as alleged by Sandia, or that the ADEA was taken into consideration at the time the procedures were reviewed by the Department. At most, the Department's review amounts to administrative inaction, and Sandia's good faith defense, even if we were to hold that such a defense were available under the ADEA,[4] is to be disregarded and the trial court so acted. *King v. Board of Education of the City of Chicago*, 435 F.2d 295 (7th Cir. 1970), *cert. denied*, 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649; 29 U.S.C. § 260.

## THE AWARD OF DAMAGES BASED UPON SANDIA'S STRETCH OUT SALARY POLICY

■ Sandia's next argument is that the trial court erred in allowing the recovery of damages based upon the practice and policy known as "stretch out". This is based upon the fact that this policy and practice was discontinued in April, 1973.

In complying with their notice requirements to the Secretary of Labor and to the New Mexico Human Rights Commission,

---

4. Sandia urges that the good faith defense of § 11 of the Portal-to-Portal Act, 29 U.S.C. § 260 was incorporated into the ADEA through the Fair Labor Standards Act. The ADEA itself, by its Section 7(e) expressly incorporates Sections 6 and 10 of the Portal-to-Portal Act, but does not mention § 11. *Lorillard v. Pons*, 434 U.S. 575, 581–582 (1978). Since the evidence does not support a good faith defense, we need not decide the issue of whether such "double statutory incorporation" was intended by Congress.

none of the private plaintiffs urged that the stretch out policy was an independent ground for alleging unlawful age discrimination. Sandia further challenges the theory that its use of the stretch out policy had a continuing effect upon Sandia's employees, many of whom received salary increases after the policy was discontinued.

Stretch out, as we have heretofore explained, was simply a written chart which specified the time interval required between salary increases of specified minimum percentages. The time intervals (in the charts used during the years prior to the 1973 reduction in force) classified employees within age groupings; 29 and under, 30–35, 36–45, and 46 and over. Older employees were required to wait longer periods for minimum salary increases. Sandia attempted to justify the charts on the basis of increased proficiency of "mature" employees and concern that older employees would be insulted by more frequent but less substantial wage increases. The system was said to be based on wage studies and was considered motivational. The system later was modified however, to substitute "professional experience in research and development" (PERD) in place of age.

There can be little question that the stretch out system had both overt and hidden age bias as an integral feature of its structure. Hidden effects were noted by the trial court in the tendency of the existence of the stretch out policy to cause supervisors to assign higher performance rankings to younger employees so that immediate benefits would result from the change in rank. There was little point in upgrading an older employee, as no immediate benefits would accrue to the employee if he had already received a salary increase during his required waiting period. Little question exists that the effects of holding back salary increases for older employees

had continuing effects on Sandia's employees, particularly since salary increases were granted in percentages of current salary rather than in dollar values. An employee who received 5% salary increases every 21 or more months because of his age being over 46, was treated far less favorably than an employee of 29 or under who could receive a 5% increase every 12 months.[5]

The trial court awarded damages based on the stretch out policy from and after March 30, 1972. The Judge used the date of commencement of the lawsuit by the Secretary of Labor in March, 1975. Sandia does not challenge the computations of these damage awards but rather urges that there was no continuing effect of the stretch out policy upon which the awards could be granted. We disagree, and hold that the continuing effect of the policy prohibiting salary increases to employees within the protected class as freely as salary increases were granted to employees outside of the class is compensable as an item of damages.

## THE CHALLENGE TO THE AWARD OF DAMAGES TO THE EMPLOYEE WHOSE AGE WAS OUTSIDE OF THE CATEGORY FOR WHOM THE STATISTICS SHOWED A *PRIMA FACIE* CASE

■ Sandia singles out the case of one plaintiff, William Robertson, as being properly awarded damages, as his age at the time of his selection for termination was only 50. The trial court in its Interlocutory Opinion, found that:

"Individuals age 40 to 51 who filed consents in the private action may present their individual cases.... They, however, have the burden of putting on a prima facie case of discrimination and must carry the burden of proof."

5. Sandia argues that the system was not set up to operate this way: that an employee was evaluated on the basis of his production and contribution to determine the salary which was justified by comparison with empirical studies. This salary was then compared to the employee's current salary and a percentage of increase necessary to obtain the desired salary was computed. The chart was then consulted to determine the time interval since the employee's last salary increase to find the length of time necessary before the salary could be raised. There was substantial evidence that the system operated much more subjectively than was reflected in its initial justification on paper.

At the trial of the "remedial phase" Robertson presented evidence that he was within the protected class, was considered to be doing his job satisfactorily, was selected for termination, and was replaced by a younger employee. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The trial court considered the evidence adduced by Sandia to be pretext. *EEOC v. Sandia Corp., supra.* Sandia argues that the evidence, including the statistical evidence adduced in the "liability phase" trial should not have been considered by the trial court and that Robertson at age 50 entered the "remedial phase" with no evidence in his favor before the court. This reasoning is based upon the wording of the First Circuit's recent opinion in *Loeb v. Taxtron, Inc.*, 600 F.2d 1003 (1st Cir. 1979) to the effect that:

> "Indeed, the inference of discrimination created by the prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext, see [*Furnco Construction Corp. v. Waters*, 438 U.S. 567] at 578 [98 S.Ct. 2943, 2950, 57 L.Ed.2d 957]."

The *Loeb* decision is overall well reasoned and we do not disagree with its reasoning. We do not, however, interpret the First Circuit's use of the word "dispelled" as does Sandia. Its argument is that the trial court must ignore all of the evidence tending to show a *prima facie* case of unlawful discrimination once an employer presents *any* evidence at all in the nature of a reason for its actions. The statistical and direct evidence that employees in Robertson's age and job category were discriminated against was strong. True, the trial court did not consider it to be a *prima facie* case. It does not follow that the trial court was required at the second stage of the trial to thereafter refrain from considering that evidence, and weighing it in the course of deciding whether his conclusion was supported by substantial evidence.

The evidence with respect to each individual plaintiff's claims was carefully reviewed by the trial court and finding and conclusions drawn therefrom are not otherwise individually challenged. We need not therefore, consider each individual plaintiff's evidence, as we did in *EEOC v. Sandia Corp., supra*, with an eye toward considering the sufficiency of the supporting evidence.

## THE CROSS APPEAL OF PUGLISI

■ One of the two private plaintiffs whose complaints were dismissed, Charles Puglisi, has cross appealed from that judgment. He challenges the sufficiency of the evidence that his selection for discharge was non–discriminatory.

Puglisi was 56 years old at the time he was selected for discharge in 1973. He remained in Sandia's employ to be allowed to complete 20 years of service, and was involuntarily terminated on January 31, 1975. The trial court found that Sandia evidenced non–discriminatory reasons for selecting him for layoff and for denying him salary increases, which overcame the "presumption" created in his favor by the establishment of the *prima facie* case. It further found that Puglisi was terminated for good cause and not in violation of the ADEA.

Sandia's evidence with regard to Puglisi's job performance, attitude and use of time indicated that he was a less than satisfactory employee. He was said to be abrasive and argumentative. His work in the area of wage and salary administration within the personnel department and his prior work in records management where he worked from 1962 until 1969 was said to be substandard. His job prior to selection for layoff involved test administration in the personnel department. His work on assignments in equal opportunity employment analysis was said to be slow. Another employee was added to the staff to assist Puglisi in doing work which management felt Puglisi should have completed himself. When the funding reduction required cutbacks in Sandia's operations, Puglisi's department determined that one job in Puglisi's area could be eliminated. His supervisors testified that age played no part in the determination to select Puglisi for termination.

Puglisi, of course, presented evidence of long and faithful service, with no history of employment problems. He also asserts that his department's staff was not reduced but was increased by the hiring of female and minority personnel.

These are, of course, factual issues, *EEOC v. Sandia Corp., supra*, which in Puglisi's case were resolved by the trial judge, as the finder of fact, against Puglisi. Our scope of review is to inquire whether the findings are supported by substantial evidence, and we must conclude that they are.

One final issue is raised by Sandia regarding the allowance to certain plaintiffs of damages without the deduction of unemployment compensation, pension benefits and layoff allowances, as well as the "projected wages" awarded as damages for the stretch out policy. In our opinion in *EEOC v. Sandia Corp.*, we reversed the award of damages which did not deduct severance pay, or layoff allowances paid to the claimants at the times of their termination.

Only two of the private plaintiffs, Robertson and Kassens, were awarded damages without deduction of layoff allowances actually paid. In both instances the amounts were doubled as liquidated damages. In Kassens' case, the award was $12,450, and in Robertson's $11,644.

The judgments in our actions Nos. 79–1173 (Kassens) and 79–1179 (Robertson) are reversed with instructions to deduct from the sum awarded to these plaintiffs the amounts allowed as layoff allowances.

The remaining judgments are affirmed.

BARRETT, Circuit Judge, dissenting:

I reluctantly dissent, not on the basis of the merits so thoroughly researched and discussed by Judge Doyle, but solely and only because nothing in the record discloses that the aggrieved parties complied with that which I consider a jurisdictional prerequisite before initiating the instant suits.

The precise language of the governing statute leaves no room for the proposition that a complainant under the Act need only "touch base" with a "deferral state" counterpart agency before initiating suit. The very purpose of the statute is to promote local efforts by those most intimately concerned to attempt to settle such claims without resort to litigation. There is every reason to believe that such settlement negotiations are more likely to prove fruitful if processed on the local basis. New Mexico has such an agency–the Human Rights Commission.

This record reflects that: complaints were lodged by Mistretta and McCrory with the New Mexico Human Rights Commission; the Executive Director of the New Mexico Commission thereafter wrote to counsel for the complainants advising that an investigator in Albuquerque had been assigned to the cases and that the parties should be contacted that week and that the matter would be pursued in accordance with the statutory provisions; at the date Mistretta and McCrory filed suit they did not allege, and the record is absolutely barren of any indicia that (a) the sixty (60) day period had expired during which the New Mexico Commission had exclusive jurisdiction to pursue a state investigation, (b) if the sixty (60) day period had expired what, if any, recommendation had been submitted by the New Mexico Commission, or (c) that the complainants afforded the New Mexico Commission any opportunity to carry out its investigation, and to afford any opportunity for redress.

29 U.S.C. § 633 provides:

*§ 633. Federal–State relationship*

(*a*) *Federal action superseding State action.* Nothing in this Act [29 U.S.C.S. §§ 621–634] shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this Act [29 U.S.C.S. §§ 621–634] such action shall supersede any State action.

(*b*) *Limitation of federal action upon commencement of State proceedings.* In the case of an alleged unlawful practice occurring in a State which has a law

prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 7 of this Act [29 U.S.C.S. § 626] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: Provided, That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

The case authority is clear, I believe, that a *simple filing* with the state agency does not satisfy the requirement that under § 633(b) a plaintiff *resort* to state remedies before bringing suit under the Age Discrimination in Employment Act. The Act requires that the state agency be, in fact, *afforded the first opportunity to redress* the alleged discriminatory practices within the sixty day period. I agree that § 633(b) does not prevent the EEOC from proceeding with an independent investigation during the aforesaid sixty (60) day waiting period. *Marshall v. West Essex General Hospital,* 575 F.2d 1079 (3rd Cir. 1978). Even so, the federal judiciary is precluded from entertaining suits to redress discriminatory practices within the sixty day "waiting period" unless the State Agency notifies the parties and the EEOC that it has terminated proceedings prior thereto. *See* Age Discrimination in Employment Act, 24 ALR Fed. 808, pp. 834, *et seq.,* "Waiting Period in Certain States".

I would remand this cause to the District Court for further proceedings specially to determine whether the jurisdictional prerequisite provided for under § 633(b) was in fact satisfied before the instant actions were filed. If not, I would set aside the judgments, vacate the court proceedings and require compliance with the jurisdictional prerequisite. It ill serves proper Federal-State relations to ignore the plain language of the Act.

On Petition for Reconsideration

This matter comes before the court on the motions of the appellees in causes Nos. 79–1173 (Kassens) and 79–1179 (Robertson) for reconsideration of a portion of our opinion of October 21, 1980. The defendant appellants have responded to the motions.

The motion to reconsider recites that our remand in these two causes was in error; that it was predicated upon the erroneous assumption that these two appellees were awarded damages without deduction of layoff allowances actually paid. We held in *EEOC v. Sandia Corporation,* 639 F.2d 600 (10th Cir. 1980) that such allowances should be treated as mitigating and deductible from a damage award under the ADEA.

The motion before us points out that Kassens elected to take an extended termination date in lieu of a layoff allowance, but that the trial court found that he was entitled to such an allowance rather than relocation expenses. Similarly, Robertson is said to have elected to take an extended termination date in lieu of a layoff allowance, and the trial court measured his damages according to the amount of the layoff allowance he should have received. It is brought to our attention that the trial court rejected an approach made by these claimants to establish damages by other means, such as showing relocation expenses.

Inasmuch as these two parties were unable to prove at the trial entitlement to general damages (they maintain that they sought but were denied the right to prove such damages), since there has been no award of general damages, there can be no deduction. Hence the motion for reconsideration is granted and it is directed that on remand that Kassens and Robertson be awarded the full amount of extended layoff allowances for the limited purpose of entering the judgments, which are affirmed.

In all other respects the motions for reconsideration or for rehearing are denied.