743 P.2d 110
**Ramon MARES, Plaintiff-Appellant,**

v.

**SANTA FE PUBLIC SCHOOLS,
Defendant-Appellee.**

**No. 16634.**

Supreme Court of New Mexico.

Aug. 24, 1987.

Berardinelli & Martinez, Martin M. Martinez, David J. Berardinelli, Santa Fe, for plaintiff-appellant.

Caldwell, Lenssen, Mandel & Jesmer, Paul R. Caldwell, Kally A. Genova, Santa Fe, for defendant-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff-appellant, Ramon Mares (Mares), appeals the judgment of the district court in favor of defendant-appellee, Santa Fe Public Schools (School Board). For the reasons stated below, we affirm.

### FACTS

On September 22, 1983, Mares filed a complaint with the New Mexico Human Rights Commission (HRC), alleging that he had been fired (May 11, 1983) by the School Board because of his age (50). On September 29, 1983, HRC wrote to Mares explaining that HRC's rules and regulations specify that in the event a complainant cannot be contacted for a sixty-day period, the complainant's case would be closed by HRC's executive director (the Director) without prejudice.

Mares asked HRC to forward his file to the federal Equal Employment Opportunity Commission (EEOC) for a determination of Mares' rights under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 621 (1967). On July 12, 1984, the Director advised Mares in writing that the EEOC "has determined that your complaint is not timely, within 300 days of the act of harm, May 11, 1983." On July 16, 1984, the Director advised the School Board's superintendent that a formal hearing on Mares' case had been scheduled for October 9, 1984. On September 18, 1984, HRC tried unsuccessfully to have Mares' attorney file an entry of appearance; subsequently the hearing set for October 9 was cancelled. On October 15, 1984, HRC tried unsuccessfully to contact Mares to have Mares' attorney enter an appearance of record. On November 9, 1984, HRC wrote to Mares, stating, "This office needs to set your case for Pre-Hearing Confer-

ence and Formal Hearing and I still don't have an Entry of Appearance from your attorney. Please let me know what your intentions are by November 20." Attached to the bottom of the letter was a handwritten note dated "11/21/84," which read, "Berardinelli's secretary called. He will enter appearance." On November 24, 1984, Mares' attorney (Berardinelli) formally entered an appearance in the case.

On January 4, 1985, counsel for both parties were advised by HRC to send their respective drafts of a proposed pre-hearing order to HRC by January 14. On April 1, 1985, the Director wrote Mares' attorney advising him that Mares' version of the pre-hearing order had not arrived, and requested receipt of the order by April 10. In his letter the Director cited the applicable HRC rule which governs submission of pre-hearing orders. On April 16, the Director wrote Mares' attorney again, saying, "The pre-hearing order was due in our offices by January 14, 1985. On April 1, 1985 we wrote you and allowed you until April 10 to submit your order. To date we have not received the order nor any other response from you. Please be advised that the formal hearing scheduled for May 6 is now cancelled. As per Section II G 2 of the Rules and Regulations of the Human Rights Commission, we are now closing this case administratively, without prejudice, for your failure to cooperate. It is our opinion that we have been more than fair with your office in trying to accommodate your needs."

On August 29, 1984, approximately three months before Mares' attorney had filed entry of appearance in his client's HRC case, Mares, through his attorney, filed in the United States District Court, District of New Mexico, a "Complaint For Damages For Age Discrimination," naming the School Board as defendant. On July 31, 1985, Mares, through his attorney, confessed judgment in the federal case in favor of defendant, acknowledging that Mares' failure to timely file his complaint with the EEOC deprived the federal court of jurisdiction. On July 31 Mares' attorney wrote the Director asking HRC to reinstate Mares' complaint. On August 7, 1985, the federal district court entered an order dismissing Mares' complaint. On August 30, 1985, the Director responded to Berardinelli's letter of July 31 by writing, "Due to your apparent lack of interest and attention in pursuing this case, we have decided to sustain our decision that the case continue to be administratively closed. Your letter [of July 31] fails to adequately explain the delays in filing a Pre-Hearing Order * * * At no time during this period did you request an extension of time limits as is provided for in the Rules."

On September 25, 1985, Mares, through his attorney, filed in the District Court of Santa Fe County his "Notice of Appeal of Decision of Human Rights Commission of New Mexico," in which he appealed "the decision of [HRC] rendered * * * on August 30, 1985," and asked for "Trial de Novo * * * as provided in Section 28–1–13(A), NMSA 1978 Comp." On June 19, 1986, after a trial de novo, the trial court ruled, "[T]he action of [HRC] in closing Mares' file for failure of cooperation was correct and * * * accordingly, Mares' appeal should be dismissed." The present appeal then followed.

## EFFECT OF THE FEDERAL "ADEA" ON THE HRC ACTION

The only meritorious issue which Mares raises on appeal is that his filing of the complaint in federal court stayed the proceeding before HRC, and thus HRC's dismissal of and subsequent refusal to reinstate Mares' case (April 16, 1985) are actions that were void. Mares relies on 29 U.S.C. § 633, which states that a complaint filed under the ADEA "shall supersede any state action." Mares argues that "supersede" is equivalent to "stay," and that HRC was prohibited from taking any action during the time that Mares' case was being considered by the federal court, even though the Director's action of August 30, 1985 post-dated the federal court's order of dismissal of August 7, 1985.

■ While it is mandatory that an aggrieved person in a state with an agency empowered to remedy age discrimination in employment resort to the state's appropri-

ate administrative remedies before bringing suit in federal court under the ADEA, *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), such requirement does not mean that the state agency must cease consideration of a prior complaint until such time as the federal court has resolved an ancillary lawsuit filed in federal court under the ADEA. Mares cites *Pandis v. Sikorsky Aircraft Div. of United Technologies Co.*, 431 F.Supp. 793 (D.Conn.1977), as support for the opposite proposition, but *Pandis* merely held that a federal court hearing a case based on the ADEA should not assume pendent jurisdiction in a subsidiary action based on a *state* age discrimination statute.

■ Further, the meaning of the words "state action" in 29 U.S.C. § 633 has been held to mean "a trial on the merits." *National Cash Register v. Riner*, 413 A.2d 890, 893 (Del.Super.1979). In the case before us there was no state action resembling a trial on the merits. HRC's actions during the pendency of Mares' abortive federal cause of action, including HRC's April 16, 1985 dismissal, were taken only because HRC could not stir Mares or his attorney to notify HRC as to Mares' intentions concerning the complaint pending before HRC. Thus, even assuming that 29 U.S.C. § 633 requires a stay, HRC's action during the period of Mares' federal lawsuit was not the type of action prohibited by Section 633.

There appear to be three general interpretations of the word "supersede" as used in Section 633. The first is to interpret "supersede" as meaning "stay", and has been stated by the Second Circuit as follows: "As the district court correctly found, under the ADEA 'the Secretary [of Labor] has absolutely no power to extinguish * * * state claims [or] state statutory rights.' The relevant section of the ADEA, § 14(a), 29 U.S.C. § 633(a), provides only that the commencement of a federal action shall "supersede" state claims. The legislative history is clear that this language only empowers the Secretary to stay state proceedings, not to dismiss them." (Citations omitted.) *Dunlop v. Pan Amer-*

*ican World Airways, Inc.*, 672 F.2d 1044, 1049 (2d Cir.1982).

The second interpretation of "supersede" supports the proposition that a federal case filed under the ADEA does not require staying of the state action (thereby construing "supersede" more narrowly than did the court in *Dunlop v. Pan American World Airways*). This interpretation is found in *Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759 (S.D.N.Y.1986), where the court found that New York's equivalent of HRC *"usually* stays its proceedings while the federal case is pending." *Id.* at 761 (emphasis added). The emphasized word "usually" illustrates that "supersede" does not necessarily mean "stay," and that such "staying" as is done by the administrative agency in New York is optional. Finally, in *Mistretta v. Sandia Corp.*, 639 F.2d 588 (10th Cir.1980), the court interpreted the Supreme Court's holding in *Oscar Mayer & Co. v. Evans* as standing for the proposition that it is the federal court, and not the state court, which " 'should be held in abeyance,' so as to give the state agency the opportunity to entertain respondent's grievance." *Id.* at 593 (citations omitted).

None of these interpretations requires us to hold that HRC's action during the pendency of Mares' federal claim was inconsistent with the federal statute. Further, regardless of the meaning of the word supersede as used in Section 633, Mares is still left with the fact that the Director's August 30, 1985 refusal to reinstate Mares' case post-dated the federal court's August 7 dismissal of Mares' federal claim. Thus, such arguments as Mares may have made with respect to "staying" *before* August 7, may not be applied to any action which HRC took *after* August 7. *See Pandis v. Sikorsky Aircraft Div. of United Technologies Co.*, where the court held, "If at the termination of his federal lawsuit plaintiff thinks that state law would afford remedies not granted in this case, he will be free to resume his action before the [Connecticut equivalent of HRC] and pursue his state appeal if necessary." 431 F.Supp. at 796. Pursuing his state appeal at the termination of his federal lawsuit is precisely

what Mares did here, but the District Court of Santa Fe County found in favor of the school board. Our reading of the record supports the trial court's decision.

We thus hold that HRC's action during the pendency of Mares' federal case did not violate 29 U.S.C. § 633, and that both HRC's dismissal of Mares' complaint on April 16, 1985 and its refusal on August 30, 1985 to reinstate Mares' case were within the authority granted to the Director by New Mexico's Human Rights Act, NMSA 1978, Sections 28–1–1 to –7, 28–1–9 to –14, and not an abuse of discretion.

Accordingly, we affirm the District Court of Santa Fe County.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.