Gary A. THIESSEN, Plaintiff,

v.

GENERAL ELECTRIC CAPITAL COR-PORATION, d/b/a GE Capital, and Montgomery Ward Credit Services, Inc., f/k/a Monogram Retailer Credit Services, Inc. Defendants.

No. 96–2410–JWL.

United States District Court, D. Kansas.

Feb. 5, 1998.

Order Denying Motion March 11, 1998.

Bert S. Braud, Dennis E. Egan, The Popham Law Firm, Kansas City, MO, John M. Klamann, Dirk L. Hubbard, Overland Park, KS, for Plaintiffs.

Brian J. Finucane, Sharon D. Hess, Bioff, Singer & Finucane, Kansas City, MO, Glen D. Nager, Jones, Day, Reavis & Pogue, Washington, DC, Steven T. Catlett, Matthew W. Lampe, Jones, Day, Reavis & Pogue, Columbus, OH, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on plaintiff's motion to join additional parties as plaintiffs and to certify the action as a collective action under the Age Discrimination in Employment Act (ADEA) pursuant to 29 U.S.C. § 216(b) (Doc. # 215). The court conducted a hearing on the motion on January 26, 1998. Having carefully considered the parties' papers and their oral presentations, the court is prepared to rule. For the reasons set forth below, plaintiff's motion is granted in part and denied in part, subject to further review of the certification issue in connection with any motion to decertify.[1]

### I. Procedural History

After exhausting administrative prerequisites, plaintiff Gary Thiessen filed a complaint on September 23, 1996 alleging violations of the ADEA arising out of his employment with defendants.[2] On May 2, 1997, the court held a scheduling conference during which counsel for Mr. Thiessen announced their intention to send notices to potential plaintiffs for purposes of proceeding as a collective action under § 216(b).[3]

Accordingly, the court established a deadline of August 1, 1997 for potential plaintiffs to file "opt-in" request forms. A total of thirty individuals elected to opt-in to the action and filed the requisite consent forms. The parties have engaged in considerable discovery both on the merits and on the issue of the appropriate composition of the proposed plaintiff group.

Mr. Thiessen now moves the court to join the opt-in plaintiffs and certify the action as a collective action under 29 U.S.C. § 216(b). Counsel for Mr. Thiessen did not seek conditional certification of the proposed group prior to sending out notice to potential plaintiffs. Thus, Mr. Thiessen's motion marks the first opportunity the court has had to address the certification issue.

### II. Background

Mr. Thiessen has been an employee of defendants for nearly thirty years.[4] He is fifty years old. After defendants allegedly denied Mr. Thiessen a series of promotions, Mr. Thiessen filed a charge of discrimination with the EEOC and the Kansas Human Rights Commission alleging violations of the ADEA. In his charge, Mr. Thiessen detailed the circumstances surrounding the promotions at issue. In addition, Mr. Thiessen alleged company-wide discrimination based on age:

> Employment decisions at GE Capital for persons similarly situated to me show a "stark pattern" unexplainable on grounds other than age .... GE Capital has a well-established history of "early-outing" or attempting to "early-out" older white executives at or near my level. Further, the company has an express but covert policy of discriminating against older white employees. Older white employees who are performing at a level which meets or exceeds objective expectations are identified as "White blockers" or "blockers." They are called "Blockers" because their continued employment "blocks" the promotion of younger ... "high potential" employees. The company's policy is to force the older

1. As set forth in the court's amended scheduling order, any dispositive motions, including motions to decertify, shall be filed on or before April 3, 1998.

2. Mr. Thiessen also alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII). Because this claim is not relevant to Mr. Thiessen's motion, the court will not discuss it.

3. The ADEA incorporates the procedures for enforcement of the Fair Labor Standards Act (FLSA). 29 U.S.C. § 626(b). A class action under the ADEA is therefore governed by § 16(b) of

the FLSA found at 29 U.S.C. § 216(b) rather than Rule 23 of the Federal Rules of Civil Procedure. Section 16(b) provides that an action may be brought by an employee for himself or herself and on behalf of "other employees similarly situated." An employee similarly situated does not become a party-plaintiff under § 16(b) "unless he gives his consent in writing to become such a party" and files consent in the court where the action is pending. 29 U.S.C. § 216(b).

4. Mr. Thiessen is currently employed by defendants.

white employees into early retirement or to eliminate the employee's position through restructuring.

In his charge, Mr. Thiessen also alleged that "GE Capital has a pattern and practice of removing employees identified as 'Blockers' from their positions."

On September 23, 1996, Mr. Thiessen filed a complaint alleging violations of the ADEA. In May of 1997, Mr. Thiessen sent notice of the action to potential plaintiffs for the purpose of proceeding as a collective action under § 216(b). The notice invited individuals who met the following criteria to opt-in to the action:

(1) 40 years of age or older;

(2) employed by General Electric Capital Credit, Montgomery Wards Credit Services or Monogram Retail Credit Services, Inc. (MRCSI);

(3) members of the salaried exempt work force as either a Band III, IV or V employee; and

(4) involuntarily discharged, laid off, terminated, downgraded, demoted, denied advancement opportunities or forced to retire from employment by General Electric Company.

A total of thirty individuals elected to opt-in to the action and filed the requisite consent forms.[5] Mr. Thiessen seeks to join all thirty opt-in plaintiffs and to proceed as a collective action under § 216(b).

Discovery has revealed significant differences among the thirty opt-in plaintiffs, both in terms of employment situation and alleged discriminatory treatment. The opt-in plaintiff group consists of individuals who have held dozens of different positions (each with different requirements and responsibilities) across seven states.[6] They range in age from approximately 45 to 60 years old and range in tenure from 4 years to 31 years.

They have been supervised by many different individuals. In addition, the opt-in plaintiffs represent three of the five salary grades, with a salary range of approximately $25,000 to $75,000.

Finally, and perhaps most significantly, the opt-in plaintiffs allege widely varying adverse employment actions spanning nearly ten years. The challenged employment actions range from failure to promote, failure to transfer, layoff and constructive discharge to downgraded performance evaluations and discrimination in job assignments and training. According to the defendants, the thirty opt-in plaintiffs dispute over two hundred separate employment actions.

In support of his motion, however, Mr. Thiessen alleges an overall policy of defendants to rid the company of older workers. In support of this allegation, Mr. Thiessen relies on a series of documents referring to "blockers" and a "blocker" program allegedly implemented by top executives in defendants' corporate hierarchy.[7] According to Mr. Thiessen, this "blocker" program targeted older employees regardless of location, job position, salary or any other factor other than age.

Thus, Mr. Thiessen contends, the opt-in plaintiffs are "similarly situated" for purposes of § 216(b) in that each opt-in plaintiff has been adversely affected by a company-wide policy of age discrimination (i.e., the "blocker" program). Defendants vigorously deny the existence of any policy or plan of age discrimination and further contend that the "blocker" program is insufficient to render the opt-in plaintiffs "similarly situated" as required by § 216(b).

### III. The "Single Filing" Rule

Before bringing a civil action under the ADEA, a plaintiff must have filed a timely

---

**5.** Because counsel for Mr. Thiessen did not seek conditional certification from the court prior to sending out notice of the action, the court played no part in tailoring the proposed group.

**6.** The opt-in plaintiffs are either current or former employees of defendants in Kansas, Virginia, Texas, Georgia, Illinois, California or Nevada.

**7.** One document, for example, is an outline of discussion topics for a meeting attended by de-

fendants' Human Resources managers in June 1993. The outline is entitled "Reorganization Strategy—Potential 'Blockers'" and includes topics such as "Identification of Blockers" and "Time Line of Removing Blockers." According to the document, one objective of the "reorganization strategy" is to "provide opportunities for internal high potential leadership."

charge of age discrimination with the EEOC. 29 U.S.C. § 626(d).[8] The purpose of this filing requirement is to give the EEOC an opportunity to resolve the dispute through conciliation and to give notice of the alleged violation to the defendant. *Id.; Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994). In appropriate circumstances, however, most courts permit similarly situated individuals to join the action of a plaintiff even though the individual has not filed his or her own EEOC charge, so long as at least one plaintiff has complied with the filing requirements of § 626(d). *See, e.g., Mistretta v. Sandia Corp.*, 639 F.2d 588, 593–94 (10th Cir.1980). This is commonly referred to as the "single filing" rule.[9]

Although defendants concede the viability of the single-filing rule in appropriate circumstances, they contend that such circumstances are not present here. Specifically, defendants maintain the single-filing rule should not apply to the opt-in plaintiffs for the following reasons: (1) Mr. Thiessen's charge of discrimination was insufficient to put either the EEOC or defendants on notice of potential class claims; (2) the single-filing rule only applies to those opt-in plaintiffs who could have filed timely charges of discrimination on the date Mr. Thiessen actually filed his charge; and (3) the claims of the opt-in plaintiffs are beyond the scope of Mr. Thiessen's charge. Each of these arguments is addressed below.

### A. The Notice Requirement

Defendants urge that Mr. Thiessen's charge of discrimination is insufficient to satisfy the notice requirements of § 626(d) on behalf of the thirty opt-in plaintiffs. The court disagrees. After carefully reviewing Mr. Thiessen's charge of discrimination, the court finds the charge sufficient to give notice of potential class claims against defendants.

In order for individuals in a collective action to invoke the single-filing rule, the filed charge must contain an allegation of class-wide discrimination sufficient to give the defendants notice of potential class claims. *See Mistretta*, 639 F.2d at 593–94 (holding notice requirements of § 626(d) were satisfied on behalf of similarly situated opt-in plaintiffs where timely notice had been given for the group).

In *Mistretta*, only two plaintiffs in the § 216(b) action filed charges of discrimination with the EEOC and the appropriate state agency. *Id.* at 593. In analyzing whether the notice requirements of § 626(d) had been satisfied as to the remaining opt-in plaintiffs, the Court reasoned:

> The recipients were notified that the suit was intended to be a class action for all employees or former employees of Sandia who were between the ages of 40 and 65. The formal charges were alleged to have been filed for the individual complainants and all others similarly situated. *The allegation was that Sandia's "arbitrary action constitutes age discrimination against workers over 40,"* a notice which notified the New Mexico Human Rights Commission so that it had opportunity to investigate and to act within the statutory time limitation.

*Id.* at 595 (emphasis added). The Tenth Circuit concluded that the charge was adequate to satisfy the notice requirement. *Id.*

In reaching its decision, the court recognized that the ADEA is "a remedial statute that is to be liberally construed" and "that it should be read in such a manner as to give

---

**8.** The charge-filing requirement of the ADEA reads:
> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
> (1) within 180 days after the alleged unlawful practice has occurred; or
> (2) in a case to which section 633(b) of this title applies, within 300 days after the al-

> leged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under state law, whichever is earlier.

29 U.S.C. § 626(d).

**9.** Mr. Thiessen filed a charge of discrimination with the EEOC on February 2, 1996. None of the opt-in plaintiffs filed charges of discrimination.

full recognition to that remedial character." *Id.* at 593–94 n. 3 (quoting *Bean v. Crocker Nat'l Bank,* 600 F.2d 754, 759 (9th Cir.1979)(quoting *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 764, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (Blackmun, J., concurring))). The court continued:

> The ADEA's broad remedial purposes of prohibiting arbitrary age discrimination and of promoting the employment of older persons based on their ability rather than age are best served by an interpretation of 29 U.S.C. § 216(b) that permits similarly situated complainants to join in an action as unnamed parties so long as a named plaintiff has complied with the notice requirements of 29 U.S.C. § 626(d).

*Id.* (quoting *Bean,* 600 F.2d at 759).

■ Defendants interpret *Mistretta* to require an express statement in the charge that the plaintiff is bringing claims on behalf of himself or herself and "others similarly situated." Defendants' argument is not persuasive. Although the charge at issue in *Mistretta* "in form included 'individually and on behalf of all others similarly situated,' " the Tenth Circuit did not focus on the form of the notice. Rather, as described above, the court believed the allegation that Sandia's "arbitrary action constitutes age discrimination against workers over 40" gave sufficient notice to the state agency so that it had an opportunity to investigate the charge, particularly in light of the ADEA's broad remedial scheme. In short, this court believes *Mistretta* simply requires allegations of class-wide discrimination in order to satisfy the notice requirements of § 626(d). *See Gray v. Phillips Petroleum Co.,* 638 F.Supp. 789, 793–94 (D.Kan.1986) (similar interpretation of *Mistretta*). *See also Anderson v. Montgomery Ward & Co.,* 852 F.2d 1008, 1017 (7th Cir.1988) (holding explicit mention that a representative action is contemplated is not necessary).

■ Having concluded a filed charge need not contain an express statement that the charge is filed on behalf of others similarly situated, the court must now determine whether Mr. Thiessen's charge gives adequate notice of potential class claims. In his charge of discrimination, Mr. Thiessen sets forth the following allegations:

> Employment decisions at GE Capital for persons similarly situated to me show a "stark pattern" unexplainable on grounds other than age . . . . GE Capital has a well-established history of "early-outing" or attempting to "early-out" older white executives at or near my level. Further, the company has an express but covert policy of discriminating against older white employees. Older white employees who are performing at a level which meets or exceeds objective expectations are identified as "White blockers" or "blockers." They are called "Blockers" because their continued employment "blocks" the promotion of younger . . . "high potential" employees. The company's policy is to force the older white employees into early retirement or to eliminate the employee's position through restructuring.

In his charge, Mr. Thiessen also alleges that "GE Capital has a pattern and practice of removing employees identified as 'Blockers' from their positions."

There can be little doubt that such allegations contemplate class-wide discrimination on the basis of age and were sufficient to notify the EEOC and defendants of potential class claims. Under these facts, bearing in mind the "broad remedial purposes" of the ADEA, the court believes the Tenth Circuit would find that Mr. Thiessen's charge satisfies the notice requirements of § 626(d).

*B.   The Timeliness Issue*

■ Defendants also contend the single-filing rule is properly applied only to those individuals who could have filed timely EEOC charges at the time Mr. Thiessen actually filed his charge. For the reasons set forth below, the court agrees with defendants.

Although the Tenth Circuit upheld the application of the single-filing rule in *Mistretta,* it has not had the opportunity to address the question of whether the rule applies only to those individuals who could have filed timely EEOC charges at the time the charging plaintiff filed his or her charge. The Tenth Circuit, however, has strictly enforced ad-

ministrative filing requirements in both the ADEA and Title VII contexts. *See, e.g., Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557–58 (10th Cir.1994); *Mascheroni v. Board of Regents,* 28 F.3d 1554, 1561 (10th Cir.1994) ("The Supreme Court ... has tempered an expansive treatment of the administrative statute of limitations with reminders of the necessary objectives of setting time bars.").

Moreover, the vast majority of circuit courts that have addressed this question apply the single-filing rule only to those plaintiffs whose claims arise in the "same time frame" as the filing plaintiff or who could have filed timely EEOC charges on the date which the filing plaintiff actually filed his or her EEOC charge. *See, e.g., Gitlitz v. Compagnie Nationale Air France,* 129 F.3d 554, 557 (11th Cir.1997) ("It is clear that a plaintiff who has not filed an EEOC charge may 'piggyback' on the timely filing of an EEOC charge by another plaintiff who faced similar discriminatory treatment in the same time frame."); *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 840 (6th Cir.1994) ("same time frame" requirement used in Title VII context); *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924–25 (9th Cir.1982) (applicable period of limitations for class members should have been calculated by subtracting 300 days from the date of initial charge filed with EEOC) (Title VII context).

District courts appear to interpret the "same time frame" requirement in the manner defendants urge. *See, e.g., Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 680 (D.Colo.1997) ("the administrative filing requirements are satisfied for all putative class members who could have filed an EEOC complaint at the time one of the representative plaintiffs filed such a complaint"); *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 570 (N.D.Ala.1995) ("Claims that were time-barred on the date that plaintiff filed his suit cannot be revived by the commencement of a putative class action."); *Lange v. Cigna Individual Fin. Servs. Co.,* 766 F.Supp. 1001, 1003 (D.Kan. 1991) ("Notwithstanding the fact that the 'single-filing rule' allows non-complying plaintiffs to bypass the procedural requirements of Title VII, the court finds no reason

to ... wholly ignore the time requirements imposed by Title VII.")

While the court is not bound by these decisions, it has found no cases indicating that the rule should be otherwise. Moreover, Mr. Thiessen does not offer any persuasive arguments suggesting the rule should be modified in this case. Mr. Thiessen urges that equitable tolling or estoppel principles should apply to modify the limitations period for those opt-in plaintiffs who could not have filed a timely charge of discrimination at the time Mr. Thiessen filed his charge. In support of this argument, Mr. Thiessen focuses on defendants' conduct in "actively covering up the blocker program" and "misleading employees into believing false reasons for their adverse job actions." The court is not persuaded.

Generally, a cause of action accrues under the ADEA "on the date the employee is notified of an adverse employment decision." *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994) (quoting *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir.1988) (citing *Delaware State College v. Ricks,* 449 U.S. 250, 256–59, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980))). The Tenth Circuit has narrowly construed equitable exceptions to the time limitations set forth in federal anti-discrimination laws. *See, e.g., Biester v. Midwest Health Servs., Inc.,* 77 F.3d 1264, 1269 n. 2 (10th Cir.1996) ("extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent") (Title VII context); *Hulsey,* 43 F.3d at 557–58 (ADEA context).

In fact, equitable tolling principles apply "only if the circumstances of the case rise to the level of active deception ... where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts." *Merrill v. Cintas Corp.,* 941 F.Supp. 1040, 1045 (D.Kan.1996) (quoting *Biester,* 77 F.3d at 1267–68); *Hulsey,* 43 F.3d at 557 (same). Such principles may also apply "if a plaintiff has been actively misled, or has in some extraordinary way been prevented from asserting his or her rights." *Merrill,* 941 F.Supp. at 1045 (quoting *Biester,* 77 F.3d at 1267–68).

Mr. Thiessen contends that equitable principles should apply in this case based on the conduct of the defendants. In such circumstances, the limitations period will not be tolled "unless an employee's failure to timely file resulted from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Hulsey*, 43 F.3d at 557 (quoting *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir.1990) (quoting *Price v. Litton Business Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982))).

The record does not suggest that the opt-in plaintiffs were actively deceived, lulled into inaction, or prevented from asserting their rights in some extraordinary way.[10] The fact that the defendants concealed the blocker policy is not sufficient to warrant modification of the limitations period. *See Hulsey*, 43 F.3d at 558 ("A declaration of discrimination need not be issued before the statute of limitations begins to run under the ADEA."); *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 203 (4th Cir.1990) ("If equitable tolling applied every time an employer advanced a non-discriminatory reason for its employment decisions, it would be 'tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute.' If this were the case, the [300]-day period for filing a charge would have little meaning."), *quoted in Hulsey,* 43 F.3d at 558.

Thus, the court will permit to join this action only those similarly situated opt-in plaintiffs who could have filed timely EEOC charges on the date Mr. Thiessen filed his charge of discrimination. After reviewing interrogatory responses filed by each of the opt-in plaintiffs, the court finds eight opt-in plaintiffs are precluded from invoking the single-filing rule and joining the action. Sev-

en opt-in plaintiffs resigned or were terminated from employment long before the start of the 300–day filing period. These individuals are Julia–Bates Allgood (resigned September 1993); Don B. Farrow (resigned March 1993); Delilah N. Hicks (resigned April 1994); Billie M. Huddleston (resigned April 1992); Eugene Laurenzo (laid off September 1993); Larry Nobles (laid off September 1993); and Artemio Robles (resigned 1993). In addition, opt-in plaintiff Marjorie Manson has failed to allege any discriminatory treatment in the 300–day filing window. Rather, her claims date from 1992 through 1994. The court will not permit these eight individuals to join the action, and plaintiff's motion is denied to that extent.

### C. The Scope of Mr. Thiessen's Charge

■ Finally, defendants maintain the single-filing rule is inapplicable because the claims of the opt-in plaintiffs are beyond the scope of Mr. Thiessen's charge. The court disagrees.

The Tenth Circuit recognizes the rule that a complaint may include any claims of discrimination not listed in the EEOC charge, as long as such claims are "like or reasonably related to the allegations of the EEOC charge." *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997) (quoting *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988) (quoting *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973))). This rule is consistent with the purposes of the filing requirement—to provide notice of the alleged violation to the charged party, and to provide the EEOC with the opportunity to conciliate the claim. *Id.* (citing *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989)). The Tenth Circuit has not analyzed the meaning of the "like or reasonably

**10.** During oral argument and in subsequent correspondence to the court, counsel for Mr. Thiessen requested the court defer any ruling on the "piggybacking" issue until either the dispositive motion stage or further briefing by Mr. Thiessen. This request was based on counsel's belief that the record was not yet complete with respect to the "piggybacking" issue and, in particular, the equitable tolling or estoppel arguments.

The court is not willing to delay resolution of this issue and cause all parties to incur addition-

al expense. Mr. Thiessen has had several months of discovery to determine whether any additional arguments exist with respect to the equitable estoppel issue. Despite such discovery, counsel for Mr. Thiessen has failed to provide the court with any facts to suggest any potentially meritorious claims exist. Thus, the court deems the issue ripe for consideration on the record before it.

related" rule in the context of a class or collective action, however.

Thus, the court must determine whether the claims of the opt-in plaintiffs are "like or reasonably related to" the allegations in Mr. Thiessen's charge of discrimination. In his charge, Mr. Thiessen alleges defendants "repeatedly filled positions, for which I have applied and for which I have been qualified, with individuals who are younger . . . than I." Mr. Thiessen submitted a five-page affidavit detailing these allegations. If these allegations constituted the entirety of Mr. Thiessen's charge, the court would be inclined to limit the claims of the opt-in plaintiffs to failure-to-promote claims.

Significantly, however, Mr. Thiessen also alleges that "employment decisions" for "persons similarly situated" to Mr. Thiessen show a "stark pattern unexplainable on grounds other than age" and that "the company has an express but covert policy of discriminating against older white employees." Mr. Thiessen goes on to explain, albeit briefly, the blocker policy and how "GE Capital has a pattern and practice of removing employees identified as 'Blockers' from their positions."

The court is satisfied that the claims of the opt-in plaintiffs are "reasonably related" to Mr. Thiessen's allegations of a company-wide policy of age discrimination. Although the claims of the opt-in plaintiffs are admittedly diverse with respect to the adverse employment actions alleged, the claims purportedly arise from the alleged blocker policy as set forth in Mr. Thiessen's charge. In essence, the allegations are sufficiently broad to alert the EEOC and defendants that more is alleged than an isolated act of discrimination. Thus, the filed charge fulfilled the purposes of the filing requirement—it gave defendants notice of charges related to the alleged blocker policy and provided the EEOC with the opportunity to conciliate. *See Seymore*, 111 F.3d at 799 (citing *Schnellbaecher*, 887 F.2d at 126); *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir.1993) ("[C]onsideration of complaints not expressly included in an EEOC charge is appropriate

where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."). In short, the court believes the Tenth Circuit would find the claims of the opt-in plaintiffs "like or reasonably related" to the claims of Mr. Thiessen for purposes of invoking the single-filing rule.[11]

## IV. The "Similarly Situated" Requirement

■ The ADEA permits a plaintiff to proceed on behalf of himself or herself "and other employees similarly situated." 29 U.S.C. § 216(b); 29 U.S.C. § 626(b) (incorporating remedial and procedural provisions of the FLSA). Mr. Thiessen contends the opt-in plaintiffs are similarly situated for purposes of § 216(b) in that each opt-in plaintiff has been adversely affected by a company-wide policy of age discrimination (*i.e.*, the "blocker" program). Defendants highlight the dramatic differences among the opt-in plaintiffs and maintain the blocker policy is insufficient to render the opt-in plaintiffs "similarly situated."

After carefully weighing the arguments advanced by both parties and the record evidence before it, and not without grave misgivings, the court finds Mr. Thiessen has made a sufficient threshold showing that the opt-in plaintiffs are "similarly situated" to justify a provisional certification as a collective action under § 216(b), subject to the opportunity for defendants to seek decertification by a timely filed motion after the close of all discovery on liability.

### A. Applicable Standards

■ Neither the FLSA nor the ADEA defines "similarly situated," and the Tenth Circuit has not had an opportunity to discuss the meaning of the phrase. Indeed, very few circuit courts have addressed the appropriate standard for determining whether plaintiffs are similarly situated under § 216(b). *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir.1995).

---

11. This is particularly true in light of the Tenth Circuit's recognition of the "broad remedial purposes" of the ADEA. *Mistretta v. Sandia Corp.*, 639 F.2d 588, 593–94 n. 3 (10th Cir.1980) (quoting *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759 (9th Cir.1979)).

Several district courts, however, have had occasion to address the "similarly situated" issue and have explicitly adopted a two-tiered approach to certification determinations under § 216(b). *See, e.g., Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678–79 (D.Colo. 1997); *Bayles v. American Med. Response of Colorado, Inc.*, 950 F.Supp. 1053, 1066–67 (D.Colo.1996); *Brooks v. Bellsouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D.Ala.1995). Other district courts have implicitly recognized this two-step approach. *See, e.g., Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J.1987) ("[I]n other cases the similarly situated inquiry is posed prior to class certification, and based upon the court's determination, the class or notice of the class action is tailored accordingly. This case presents a situation of a class which was conditionally certified without a determination of whether its members are similarly situated."); *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.Colo.1987) ("It remains for opt-in plaintiffs to show they are in fact similarly situated ...; however, at this stage, the facts pled are not purely personal to the plaintiffs before the Court."); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 445 (N.D.Ill.1982) ("We decide only that notice of this action to all potential claimants is appropriate, regardless of whether we may later find it necessary to bar some of them from joining in this action.").

Under this two-tiered analysis,

[t]he first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.

*Brooks,* 164 F.R.D. at 568 (quoting *Mooney,* 54 F.3d at 1213–14). According to some courts, certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See, e.g., Vaszlavik,* 175 F.R.D. at 678 (quoting *Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J. 1988)); *Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294, 303 (N.D.Cal.1991) (same).[12]

Under this approach, the district court then makes a second determination after discovery is largely complete and the case is ready for trial. At this stage, "the court has much more information on which to base its decision, and makes a factual determination on the 'similarly situated' question." *Brooks,* 164 F.R.D. at 568 (quoting *Mooney,* 54 F.3d at 1214). Thus, courts generally analyze the "similarly situated" issue under a higher standard at this stage. *See Vaszlavik,* 175 F.R.D. at 678 ("At this second stage, although not specifically deemed, the "similarly situated" standard is higher.") If the plaintiffs are similarly situated, the district court allows the case to proceed to trial as a collective action under § 216(b).[13]

This case, however, is different. Clearly, Mr. Thiessen is beyond the "notice stage" in that thirty individuals have already filed opt-

---

**12.** In light of this "lenient" standard, a vast majority of district courts grant conditional certification in § 216(b) actions at the notice stage. *See, e.g., Vaszlavik,* 175 F.R.D. at 678; *Consolidated Freightways, Inc.,* 137 F.R.D. at 303–04; *Heagney v. European Am. Bank,* 122 F.R.D. 125, 129–30 (E.D.N.Y.1988); *Sperling,* 118 F.R.D. at 406–07; *Manville Sales Corp.,* 116 F.R.D. at 277; *Walker v. Mountain States Tel. & Tel. Co.,* 112 F.R.D. 44, 47 (D.Colo.1986); *Owens v. Bethlehem Mines Corp.,* 108 F.R.D. 207, 213 (S.D.W.Va. 1985); *Marshall Field & Co.,* 93 F.R.D. at 445.

**13.** In light of this higher standard, the vast majority of district courts deny certification at the second stage of analysis. *See, e.g., Bayles,* 950 F.Supp. at 1066–67 (FLSA context); *Brooks,* 164 F.R.D. at 568–69 (determination made at notice stage but only after court had allowed "extensive" discovery on issue); *Ulvin v. Northwestern Nat'l Life Ins. Co.,* 141 F.R.D. 130, 131 (D.Minn. 1991); *Lusardi,* 118 F.R.D. at 359–61. *See also EEOC v. MCI Int'l, Inc.,* 829 F.Supp. 1438, 1445–46 (D.N.J.1993) (denying certification in summary judgment context). *But see Frank v. Capital Cities Communications, Inc.,* No. 80–CIV–2188–CSH, 1983 WL 643, at *3 (S.D.N.Y. 1983) (denying defendants' motion to dismiss opt-in plaintiffs and certifying action at second stage).

in consent forms and are ready to be joined in this action. Moreover, at the time of Mr. Thiessen's motion, the parties had engaged in three months of discovery with respect to the opt-in group. The court is not convinced, however, that the record is sufficiently complete to permit an analysis under the "higher" standard typically used at the post-discovery stage and believes that it would be better informed upon the completion of all discovery pertinent to liability.[14]

Thus, the court adopts an "intermediate" approach in analyzing the "similarly situated" issue. To the extent the record has been developed, the court incorporates an analysis of the relevant factors found in post-discovery cases.[15] The court actually makes its determination to provisionally certify, however, under a more lenient standard in light of deficiencies in the record.

### B. The "Similarly Situated" Analysis

■ Most district courts analyzing the "similarly situated" requirement at the post-discovery stage focus on three factors in determining whether plaintiffs are similarly situated: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See, e.g., Bayles, 950 F.Supp. at 1066; Brooks, 164 F.R.D. at 568; Lusardi, 118 F.R.D. at 359. The court will address each of these factors in turn.[16]

#### 1. Disparate Factual and Employment Settings

■ Defendants contend the vastly different employment situations and claims of the opt-in plaintiffs preclude this action from proceeding as a collective action. According to Mr. Thiessen, however, the alleged company-wide policy of age discrimination (i.e., the "blocker" policy) renders the opt-in plaintiffs similarly situated despite such differences in employment situations and claims.

Several courts have denied certification of a § 216(b) action when the opt-in plaintiffs represent dissimilar employment backgrounds. In Lusardi, for example, the court decertified a collective action under § 216(b) in part because of a "dramatic lack of similarity in age, salary, organization employment, and geographic location by state and city." 118 F.R.D. at 358. On remand, the court again decided to decertify the action, noting that the

> opt-in plaintiffs performed different jobs at different geographic locations and were subject to different job actions concerning reductions in work force which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis.

Lusardi v. Xerox Corp., 122 F.R.D. 463, 465 (D.N.J.1988).[17]

Similarly, in Brooks v. Bellsouth Telecommunications, Inc., the court refused to certify a collective action under § 216(b) after extensive discovery in part because the proposed plaintiff group covered all nine states in which the defendant operated. 164 F.R.D. at 569. According to the court,

> These employees would therefore be located within separate departments and under separate supervisors. Additionally, the

14. Ironically, both parties insisted during oral argument that the record was sufficiently developed to permit a conclusive determination of the "similarly situated" issue. The court remains unpersuaded.

15. In addition, incorporating an analysis of the relevant factors in post-discovery cases is beneficial to the parties in that the court will analyze any motion to decertify in light of these factors.

16. In addition to these three factors, defendants argue that various conflicts among members of the opt-in group render certification improper. For example, Mr. Thiessen supervised opt-in plaintiff Robert DeMartine during periods in

which Mr. DeMartine claims he experienced discrimination in the awarding of bonuses and raises. During oral argument, however, counsel for Mr. Thiessen explained that, according to plaintiff's evidence, the true decisionmakers with respect to hiring, firing, compensation and other personnel matters are individuals in the Human Resources department. Thus, based on the record before it, the court is not persuaded any true "conflicts" exist among the opt-in group.

17. The court in Lusardi noted, however, that "plaintiffs, after extensive discovery, ha[d] not uncovered any policy or practice of age discrimination at Xerox." Lusardi, 118 F.R.D. at 359.

[employees] represent a wide span in ages ranging from forty to seventy-five. Also, the involuntarily dismissed employees represent a variety of "pay grades." Even at this stage, it is clear that any claims of the proposed opt-in plaintiffs would present disparate factual and employment settings. *Id.; Ulvin v. Northwestern Nat'l Life Ins. Co.,* 141 F.R.D. 130, 131 (D.Minn.1991) (denying certification of thirty opt-in plaintiffs after discovery where "the class members var[ied] significantly as to age, year of termination, division in the company in which they worked, offices in the company in which they worked, employment status, supervisors and salaries."). *Cf. Hyman v. First Union Corp.,* 982 F.Supp. 1, 4, 8 (D.D.C.1997) (granting certification after discovery in part because of significant similarities in employment situations among the opt-in group including geographic location, adverse employment action and relatively short time frame).

Significantly, the plaintiff in *Brooks* alleged an "overarching" policy of the defendant of eliminating older employees. 164 F.R.D. at 564. Specifically, the plaintiff argued the company had "formulated and implemented a five-year operations plan" which contained a policy of offering illegal early retirement incentives. *Id.* Like Mr. Thiessen, the plaintiff submitted a series of documents which he alleged evidenced an overall policy of age discrimination. *Id.*[18] Despite such evidence, the court rejected the plaintiff's theory and denied certification. *Id.* at 566 ("[P]laintiff has not put forth substantial evidence that the proposed class members were the victims of a single decision, policy, or plan infected by discrimination.").

Consistent with these principles, defendants highlight the significant differences among the thirty opt-in plaintiffs, both in terms of employment situation and alleged discriminatory treatment. The opt-in plaintiff group consists of individuals who have held dozens of different positions across seven states. They range in age from approxi-

mately 45 to 60 years old and range in tenure from 4 years to 31 years. Moreover, the opt-in plaintiffs have been supervised by different individuals. In addition, the opt-in plaintiffs represent various salary grades.

More significantly, the opt-in plaintiffs allege widely varying adverse employment actions spanning nearly ten years. The challenged employment actions range from failure to promote, failure to transfer, layoff and constructive discharge to downgraded performance evaluations and discrimination in job assignments and training. According to defendants, the thirty opt-in plaintiffs dispute well over two hundred separate employment actions.[19]

In response, Mr. Thiessen directs the court to *Frank v. Capital Cities Communications, Inc.,* No. 80–CIV–2188–CSH, 1983 WL 643 (S.D.N.Y. Oct.11, 1983). In *Frank,* the defendants argued that the opt-in plaintiffs were not similarly situated because they held a wide variety of jobs and their specific complaints were not identical. *Id.* at *2. Like Mr. Thiessen, plaintiffs' theory was that each opt-in plaintiff had been the victim "of a plan by [defendants] to rid itself of its older employees through harassment and termination." *Id.* Although the court acknowledged the claims of the opt-in plaintiffs were different, it reasoned that such claims "could all quite logically be manifestations of defendants' campaign." *Id.* at *3. Ultimately, the court certified the thirteen opt-in plaintiffs:

> To deny them class treatment would be tantamount to declaring that any employer can escape ADEA class liability so long as it discriminates against a diverse group of aged employees over a wide geographic range in a number of ways, such as termination, salary, promotion, and working conditions.

Id. at *2.

This court finds the reasoning of the *Frank* decision to be persuasive at this juncture under the particular circumstances of

---

18. One document was an outline of discussion topics for a meeting attended by representatives of the defendant. The outline contained topics such as "Workforce—Mature—Move Out" and "Weaknesses—Aging Work Force." *Brooks,* 164 F.R.D. at 564.

19. A brief review of the interrogatory responses filed by each opt-in plaintiff with respect to the alleged discriminatory conduct reveals the vastly different nature and degree of the claims.

this case. Mr. Thiessen has not simply averred the existence of a discriminatory policy or merely argued that circumstantially one should infer its existence by virtue of numerous people in the protected category having incurred adverse employment actions. Instead, he has come forward with direct evidence of an overall policy of purported age discrimination. Moreover, the names of some of the opt-in plaintiffs appear on "blocker" lists. The court believes this evidence cannot be so easily discounted just because the alleged discrimination was meted out "over a wide geographic range in a number of ways" and that it merits a threshold determination that the opt-in plaintiffs are "similarly situated" to Mr. Thiessen for purposes of something akin to conditional certification. However, the court remains troubled by a puzzling lack of any significant showing by Mr. Thiessen that there is a link between this alleged policy and the adverse job actions. Even if there was a discriminatory policy, the opt-in plaintiffs are only "similarly situated" if they can make a submissible case that they, too, were victims of it. It is because of that deficiency, at least in part, that the court is unwilling to grant final certification on the record before it.

In order to survive a motion to decertify, therefore, Mr. Thiessen will need to set forth what he deems to be the specific link between the blocker policy and what occurred with each opt-in plaintiff. Absent such evidence, the argument that the opt-in plaintiffs should be considered "similarly situated" for purposes of trial will be significantly undercut and the likelihood of decertification will be dramatically increased.[20]

### 2. Various Defenses Available to Defendants

Defendants also argue that certification under § 216(b) is improper in that they will assert numerous individualized defenses with respect to the varied claims of the opt-in plaintiffs. Again, Mr. Thiessen maintains the "blocker" policy renders the opt-in plaintiffs similarly situated despite the availability of any specific individualized defenses.

Several courts have denied certification after discovery in part due to the potential defenses available to the defendant. *See, e.g., Bayles,* 950 F.Supp. at 1067 (decertifying class in FLSA context where the case was "fraught with questions requiring distinct proof as to individual plaintiffs" and defenses could not be addressed on a class-wide basis); *Brooks,* 164 F.R.D. at 569 (denying certification in part because the "circumstances of employment termination are diverse" and the court "would be faced with numerous individualized defenses," including waiver issues).

In *Lusardi,* the court considered not only the vastly different employment settings of the opt-in plaintiffs, but also the various defenses available to Xerox. 118 F.R.D. at 362–70. After a detailed discussion of possible defenses including business necessity and good cause, the court ultimately concluded that "[c]onsolidation of these claims into a representative class with the attendant defenses would not provide for an efficient proceeding." *Id.* at 370.

In response to this point, Mr. Thiessen directs the court to *Hyman v. First Union Corp.,* No. CIV.A.94–1043–RCL, 982 F.Supp. 1, 1997 WL 665480 (D.D.C. Aug.12, 1997). In *Hyman,* the opt-in plaintiffs were terminated in 1992 and 1993 after First Union acquired the institutions at which plaintiffs were employed. *Id.* at 1–2. The opt-in plaintiffs alleged the termination decisions were based solely on age. *Id.* First Union characterized the terminations as a "benevolent incursion that rescued a failed institution." *Id.*

In response to the plaintiffs' motion to certify the action under § 216(b), First Union argued that the opt-in plaintiffs were not similarly situated because of the different defenses available, including good cause, business necessity and waiver. *Id.* at 5–6. Rejecting First Union's argument, the court

---

**20.** As discussed during oral argument, the court recognizes the possibility that the evidence would support a finding that a group which is less than the entire list of opt-ins would actually be "similarly situated" for purposes of proceeding to trial as a collective action. In responding to any motion to decertify, Mr. Thiessen might consider presenting evidence which would allow the court to consider such an alternative.

concluded that "the main defense of defendants will focus on the business necessity of immediately revamping [the company] so that it could become a successful banking institution." *Id.* at 6. Ultimately, the court allowed the case to proceed as a collective action. *Id.*

In contrast, defendants here argue that they will assert defenses specific to the numerous individualized claims of each opt-in plaintiff. The court recognizes this possibility, particularly in light of the number and types of adverse employment actions at issue. The record, however, fails to provide the requisite detail to support defendants' bare assertions. Other than the potential "waiver" defense, defendants have not set forth any other defenses or explanations for any of the adverse employment actions at issue. Without such support, the court cannot adequately assess whether individualized defenses will predominate at trial.[21]

Thus, in a motion to decertify, defendants will have the opportunity to further develop the record with respect to these individualized defenses and the particularized reasons for the adverse actions at issue. At that point, the court will be better able to ascertain whether proceeding as a collective action is appropriate. If defendants can truly convince the court that individual issues would predominate at trial, the contention that the opt-in plaintiffs are similarly situated would likely be largely eviscerated.

### 3. Fairness and Procedural Considerations

Finally, the court considers the fairness and procedural aspects of allowing this case to proceed as a collective action under § 216(b). Specifically, the court is concerned with coherently managing a trial of the action and presenting the evidence in a manner that will not confuse the jury or unduly prejudice any party. If the defendants actually do possess substantial evidence of bona fide individualized defenses, the result may be such a mish-mash of highly detailed evidence that in a collective action both the defendants and the opt-in plaintiffs would run the risk of having any individualized consideration of the claims lost in the mire. There is simply a realistic limit on what a jury may reasonably be expected to absorb, retain and process—and this case may be in danger of passing beyond that limit. How this potential problem can be solved, if it can be solved, requires further exposition.[22]

### V. Conclusions

For all the reasons set forth above, then, the court grants the plaintiff's motion in part and provisionally permits the following opt-in plaintiffs to join for the purposes of maintaining a collective action: Gene Autry; Pamela S. Chudyba; Gwen Colwell; Barbara A. Croy; Jan. L. Cullison; Robert DeMartine; James C. Flower; Lawrence P. Fries; Terry M. Grisham; Elaine Hayden; Melva Heid; Linda L. Hess; Christopher P. Kaesberg; James Lawson; Brenda Lewis; Robert Marsonette; Ray Osburn; Kimberly Perron; Diana Polsinelli; Patricia Serra; Salli J. Shirey; and Janice F. Trice. However, this subject may be revisited in a timely filed motion to decertify, at which point the court anticipates that all parties will address the court's particular concerns expressed herein,

---

**21.** During oral argument, defendants indicated that detailed explanations for each adverse employment action were set forth in defendants' interrogatory responses. These explanations, however, were not made part of the record.

**22.** Mr. Thiessen suggests bifurcating the trial of this action into a liability phase and remedy phase. Under this approach, the initial phase would focus solely on whether the alleged blocker policy existed and whether the policy was implemented. Moreover, defendants would not be permitted to raise individual defenses until the remedial phase. The court believes that this approach would be unduly prejudicial to the defendants. The issues relevant to a determination of liability are not only whether the policy existed and was implemented, but also whether the policy is the reason for each adverse employment action. Thus, the defendants explanations with respect to each adverse employment action are critical to the liability issue. In any event, the court believes such an approach in the context of a jury trial would be subject to serious constitutional challenges. *See, e.g., Lusardi,* 118 F.R.D. at 371–72 ("[B]ecause congress has included certain defenses within the statutory scheme of the ADEA, it is contrary to due process to prevent their utilization by a defendant in the liability phase of a trial.").

both by citation to the evidentiary record and by argument in their briefs.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion to join additional parties as plaintiffs and to certify the action as a collective action is granted in part and denied in part, subject to further review of the certification issue in connection with a motion to decertify.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER ON MOTION

Plaintiff Gary A. Thiessen moved the court to join thirty opt-in plaintiffs and to certify the action as a collective action under the Age Discrimination in Employment Act (ADEA) pursuant to 29 U.S.C. § 216(b). On February 5, 1998, the court issued a Memorandum and Order granting plaintiff's motion in part. Specifically, the court provisionally permitted twenty-two opt-in plaintiffs to join for the purposes of maintaining a collective action.

The court concluded, however, that eight opt-in plaintiffs were precluded from invoking the single-filing rule and joining the action. Thus, the court denied plaintiff's motion to that extent. The eight opt-in plaintiffs precluded from joining the action now move the court for an extension of time to request reconsideration of the court's order (Doc. # 294). For the reasons set forth below, the motion of the opt-in plaintiffs is denied.

*Discussion*

The Federal Rules of Civil Procedure do not provide a mechanism pursuant to which a party may file a "motion to reconsider." *United States v. Dryden,* No. 93–20048–04, 96–3421–JWL, 1997 WL 458285, *1 (D.Kan.

July 25, 1997) (citing *United States v. Emmons,* 107 F.3d 762, 764 (10th Cir.1997)); *Hatfield v. Board of County Comm'rs,* 52 F.3d 858, 861 (10th Cir.1995). Moreover, the opt-in plaintiffs have not specified the procedural basis for their contemplated motion to reconsider. Thus, the court will construe plaintiffs' motion as a motion for an extension of time to file a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e) or, in the alternative, a motion seeking relief from a judgment under Fed.R.Civ.P. 60(b).[1] *See Hatfield,* 52 F.3d at 861 (court construes a motion to reconsider as a motion under either Fed.R.Civ.P. 59(e) or Fed.R.Civ.P. 60(b)); *Dryden,* 1997 WL 458285, at *1 (citing *Emmons,* 107 F.3d at 764) (same).

According to Rule 59(e), any motion to alter or amend a judgment must be filed within 10 days after entry of the judgment. Fed.R.Civ.P. 59(e). The court has no authority to extend this 10–day period. *See* Fed.R.Civ.P. 6(b). Thus, plaintiffs' notion for an extension of time to request reconsideration is denied to the extent the prospective motion to reconsider is contemplated under Rule 59(e).

A motion for relief from judgment or order pursuant to Rule 60(b), however, may be filed "within a reasonable time" but, under certain circumstances, not more than one year after the judgment or order was entered. Fed.R.Civ.P. 60(b). Thus, the opt-in plaintiffs need not move the court for an extension of time within which to file a motion under Rule 60(b). Accordingly, plaintiffs' motion for an extension of time is denied as moot to the extent plaintiffs' prospective motion to reconsider is contemplated under Rule 60(b).[2]

---

1. Although Rule 7.3 of the local rules for the District of Kansas provides a procedural basis for filing a motion to reconsider, this rule is intended to apply only to nondispositive judgments and orders. *Dryden,* 1997 WL 458285, at *1 n. 1 (citing *Steele v. Ellis,* 961 F.Supp. 1458, 1467 (D.Kan.1997)). The opt-in plaintiffs seek an extension to file a motion for reconsideration of a dispositive order. Thus, plaintiffs' notion for extension is denied to the extent the prospective motion to reconsider is contemplated under Rule 7.3.

2. The court notes, however, that a "Rule 60(b) motion is not a vehicle to re-argue the merits of the underlying judgment, to advance new arguments which could have been presented in the parties' original motion papers, or as a substitute for appeal." *Sapp v. Greif,* 173 F.R.D. 531, 532 (D.Kan.1997) (citing *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 576–77 (10th Cir.1996)). Relief under Rule 60(b) is extraordinary and may be granted only in exceptional circumstances. *Sapp,* 173 F.R.D. at 532 (citing *Cashner,* 98 F.3d at 576–77).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the opt-in plaintiffs' motion for extension of time to request reconsideration (Doc. # 294) is denied.

**IT IS SO ORDERED.**