Gary Ray **ROBINSON, et al., on behalf of themselves and all other similarly situated individuals, Plaintiffs,**

v.

**TYSON FOODS, INC., Defendant.**

No. 3:07–CV–0088–JAJ.

United States District Court,
S.D. Iowa,
Davenport Division.

Nov. 12, 2008.

Roger K. Doolittle, Jackson, MS, Brian Patrick McCafferty, Kenny Egan McCafferty & Young, Pylmouth Meeting, PA, Michael Hamilton, Provost Umphrey Law Firm LLP, Nashville, TN, Connie L. Howard, Metcalf Kaspari Howard Engdahl & Lazarus PA, Minneapolis, MN, for Plaintiffs.

Allison D. Balus, Baird Holm LLP, Omaha, NE, Joel M. Cohn, Akin Gump Strauss Hauer & Feld LLP, Michael J. Mueller, Hunton & Williams, Washington, DC, Steven D. Davidson, Baird Holm LLP, Heidi A. Guttau–Fox, Baird Holm McEachen Pederson, Omaha, NE, for Defendants.

### ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the court pursuant to plaintiffs' March 10, 2008, motion for conditional certification of a collective action pursuant to the Fair Labor Standards Act [dkt. 21]. Defendant resisted plaintiffs' motion on June 13, 2008 [dkt. 32], to which plaintiffs replied on July 9, 2008 [dkt. 41]. On July 31, 2008, plaintiffs filed supplemental authority in support of their motion, *i.e.*, a decision from United States District Judge Mark W. Bennett in the Northern District of Iowa case *Bouaphakeo v. Tyson Foods, Inc.*, which addressed similar, if not identical issues to those before this court [dkt. 41].

### *Procedural History*

Plaintiffs filed their complaint in this matter on September 12, 2007, wherein they alleged that the defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the Iowa Wage Payment Collection Act, Iowa Code Chapter 91A by failing to pay overtime wages due under these laws. On July 11, 2008, plaintiffs filed 68 consents to join this lawsuit under the FLSA [dkt. 37]. On July 23, 2008, the defendant moved to stay this matter pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML") [dkt. 39], which the court granted over plaintiffs' resistance [dkt. 46]. On October 9, 2008, the JPML denied the defendant's motion to transfer this matter to the District of Kansas for coordinated or consolidated pretrial proceedings. On November 6, 2008, the court lifted the stay in this matter [dkt. 54].

### *Conditional Certification under the FLSA*

The FLSA provides, in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

This court previously set forth the applicable standard in determining whether plaintiffs were "similarly situated" for purposes of § 216(b) in *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 576–77 (N.D.Iowa 2005).

> Both 29 U.S.C. § 216(b) and its precedent are "largely silent as to how the class certification issue should be ana-

lyzed." *Id.* (citing *Hoffmann–La Roche, Inc.*, 493 U.S. at 170, 110 S.Ct. 482). "A two-tiered analysis distinguishes between conditional class certification, generally made at the 'notice stage,' and a final class certification determination made after discovery is largely completed." *Campbell v. Amana Company, L.P.*, 2001 WL 34152094 *2 (N.D.Iowa 2001) (citing *Thiessen v. General Electric Capital Corp.*, 996 F.Supp. 1071, 1080 (D.Kan.1998)). Because the initial stage of conditional certification is "based on little or no discovery, the 'burden on plaintiffs is not a stringent one.' " *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y.1997)). Accordingly, "conditional certification of a representative class is generally granted." *Id.* (citing *Thiessen*, 996 F.Supp. at 1080). To establish that conditional certification is appropriate, the plaintiffs "need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' " *Id.* (quoting *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y.1995)). "Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Id.* (citing *Hoffmann*, 982 F.Supp. at 261; accord *Jackson*, 163 F.R.D. at 432). "The more stringent factual inquiry as to whether the plaintiffs are 'similarly situated' is made only after a more substantial record has been amassed." *Id.*

*Dietrich*, 230 F.R.D. at 576–77. District courts in the Eighth Circuit addressing this issue more recently have also employed the two-step approach to determine collective active certification under § 216(b). *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870 (N.D.Iowa 2008); *Salazar v. Agriprocessors, Inc.*, 2008 WL 782803 (N.D.Iowa 2008); *Lopez v. Tyson Foods*, Inc., 2008 WL 3485289 (D.Neb.2008); *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159 (D.Minn. 2007); *Parler v. KFC Corp.*, 529 F.Supp.2d 1009 (D.Minn.2008); *Resendiz–Ramirez v. P*

*& H Forestry, L.L.C.*, 515 F.Supp.2d 937 (W.D.Ark.2007).

To establish that conditional certification is appropriate, the plaintiffs must provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Dietrich*, 230 F.R.D. at 577 (quoting *Jackson v. New York Tel. Co.*, 163 F.R.D. at 432). Judge Bennett described plaintiffs' burden in this respect as follows:

> Although the burden at the first step is "more lenient," and does not require existing plaintiffs to "show that members of the conditionally certified class are actually similarly situated," *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D.Mo.2007), "plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required," *Young v. Cerner Corp.*, 503 F.Supp.2d 1226, 1229 (W.D.Mo.1007). The supporting evidence should include "evidence that other similarly situated individuals desire to opt in to the litigation" because " '[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants.' " *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1164–65 (D.Minn.2007) (quoting *Simmons v. T-Mobile USA, Inc.*, No. H–06–1820, 2007 WL 210008 at *9 (S.D.Tex. Jan. 24, 2007)). In addition to "whether potential plaintiffs have been identified," district courts outside of the Eighth Circuit have evaluated several other factors at this stage to determine the propriety of conditional certification, including "whether affidavits of potential plaintiffs have been submitted, whether there is evidence of a widespread discriminatory plan, and whether, as a matter of sound management, a manageable class action exists." *Jimenez v. Lakeside Pic–N–Pac, L.L.C.*, 2007 WL 4454295 at *2 (W.D.Mich. Dec. 14, 2007) (citing *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D.Mich.2004)). In sum, "[c]onditional certification in the first step 'requires nothing more than substantial allegations that the putative

class members were together the victims of a single decision, policy or plan.'" *Young,* 503 F.Supp.2d at 1229 (quoting *Davis v. NovaStar Mortg., Inc.,* 408 F.Supp.2d 811, 815 (W.D.Mo.2005)).

*Bouaphakeo,* 564 F.Supp.2d at 892.

Plaintiffs propose a FLSA class consisting of "all present and former production and support employees of Defendant Tyson's Columbus Junction, Iowa, meat processing facility who have worked for Defendant Tyson at any time since September 23, 2004." With respect to defendant's Columbus Junction plant, plaintiffs argue, production and support workers include all hourly employees in the Kill, Cut/Processing, Re–Trim, Material Handling/Load–Out, Rendering and Maintenance departments. In support of their motion, plaintiffs rely on the following allegations from their complaint:

4. During the class period in this case, Tyson failed to pay Plaintiffs their minimum hourly rate of pay for all hours of work they performed in addition to overtime as required by federal law. The uncompensated time includes, but is not limited to, time spent preparing, donning, doffing, obtaining and sanitizing sanitary and safety equipment and clothing, obtaining tools, equipment and supplies necessary for the performance of their work, "working" steels and all other activities in connection with these job functions, and walking between work sites after the first compensable work activity and before the last compensable work activity. These unpaid work activities took place before and after paid time, and during both paid breaks and unpaid lunch breaks.

5. At all times relevant to this Complaint, upon information and belief, Defendant Tyson has only paid certain "mesh wearing" employees at its Columbus Junction, Iowa, meat processing facility four (4) minutes per day for "clothes changing" time, despite the fact that Plaintiffs spend as much as 30 minutes or more per day performing uncompensated work activities as described in this Complaint.

23. Defendant Tyson owns and operates a meat processing facility in Columbus Junction, Iowa. The complained of unlawful compensation system at issue in this Complaint has affected Defendant Tyson's present and former production and support employees uniformly at these locations. At all times relevant to this Complaint, Defendant Tyson has utilized the same compensation system complained about herein.

24. Under Defendant Tyson's wage compensation system, Plaintiffs and Class members who are production employees are paid only during the time that they are present on the actual production assembly line under a system known as "gang time" or "line time." Defendant Tyson, with the exception of the payment to some employees of four minutes per day for "clothes changing time," as a matter of policy and practice, does not pay its employees for all required preproduction line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as: donning and doffing clothing and protective equipment, cleaning and sanitizing that equipment, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities. Defendant Tyson also requires its employees to be present at the production line for periods after their "gang time" (i.e., the time when they stop getting paid) but they are not paid for that time.

25. Pursuant to federal regulations and Defendant Tyson's own internal policies and procedures, Plaintiffs and class members are required to wear uniforms and special personal protective equipment ("PPE") for protection and sanitary reasons. Uniforms include shirts, pants and boots. PPE includes, *inter alia,* plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, ear-

plugs, coveralls, eye protection, and other protective equipment and coverings. Most of Defendant Tyson's employees use knives and other sharp instruments in the course of their work and the PPE is designed to protect them from injury. The PPE and other required gear are also designed to protect Tyson's meat products from contamination by food borne diseases.

26 As a consequence of the compensation system utilized by Defendant Tyson, Plaintiffs and Class members are not fully paid at the beginning of each shift for the time it takes to don uniforms, obtain gear, maintain gear, walk from the supply rooms to their lockers and/or from their lockers to sanitation stations and then to production areas, and sanitize the required PPE, walk to production areas and don PPE.

27. At the beginning of each workday, Plaintiffs and Class members are required to report to their lockers to don their uniforms. Production employees must also obtain their PPE, walk to storage areas and obtain knives and other gear, work their steels and/or mousetraps, walk to the sanitation stations and sanitize their gear, walk to the production lines and don the PPE *before* paid time begins. Other than a total of four (4) minutes per day of "clothes changing" time, Plaintiffs are not paid for these work activities.

28. Pursuant to Defendant Tyson's compensation system, employees are not fully compensated for time spent before or after paid time working steels or mousetraps, which is a necessary task for the performance of their job.

29. During their unpaid lunch and other paid or unpaid breaks, Plaintiffs and Class members have to remove their PPE, clean their PPE, and then re-don it at the end of breaks. These employees are not paid anything or are not fully paid for performing these work activities.

30. After the end of paid time, employees must finish their work on production and other activities, walk to wash stations, wait in line to wash the PPE, knives and other gear, wash their PPE, knives and gear, walk to their lockers, doff their uniforms and PPE and stow the uniforms,

PPE, knives and other gear in their lockers.

31. According to Defendant Tyson's compensation system, Plaintiffs and Class Members are not paid during the time after "gang time" (when compensation stops) although they continue to work on final production tasks and then walk to and wait at wash areas, doff PPE, wash PPE and gear (as well as their own bodies), walk to lockers, doff uniforms and stow gear and uniforms.

32. As a result of Defendant Tyson's compensation system, and other practices and policies followed by Tyson, Plaintiffs and Class members are not paid for all of the time that they work presently (other than the four minutes per day "clothes changing" which Tyson purports that it pays) and they have not been paid for all of the time they have worked for several years.

In its answer to paragraph five (5) of plaintiffs' complaint, defendant admits that it "pays some of its employees at the Columbus Junction, Iowa, meat processing facility some additional minutes (in addition to "gang time" pay) per day." In response to paragraph 24, defendant "admits that many of the hourly production workers at the Columbus Junction, Iowa, facility are paid based on 'gang time,' plus some minutes a day for pre- and post-shift activities."

█ Notwithstanding these admissions, defendant argues that plaintiffs cannot show that they are "similarly situated" for purposes of authorizing collective action treatment and notice under § 216(b) because the "gang time" payment method is not used for all employees at the facility and, where it is used, there is no common unlawful policy or practice that affects all potential class members equally because some employees are paid for some or all of their clothes-changing and washing activities. Further differentiating the employees, defendant argues, is the fact that the amount paid differs by job position and has changed over the relevant limitations period. Moreover, defendant asserts, employees in the Rendering, Freezer, Load Out, and Maintenance departments are not paid by gang time, but rather are paid

from a defined start time or clock-in until they clock out. Defendant further argues that the required PPE and washing activities vary throughout the facility, depending on the position and the supervisor's individual discretion. These factual differences, defendant contends, cannot be decided on a collective basis.

It is undisputed that hourly production employees in the Kill, Cut, and Converting departments are paid by "gang time." Mr. David Duncan, defendant's Safety Coordinator at the Columbus Junction plant, testified as such in his May 22, 2008, deposition. Mr. Duncan further testified that approximately 850 of defendant's 1,000 to 1,100 employees work in these departments. The court finds that the plaintiffs have met their burden, at this stage, of demonstrating a "single decision, policy or plan," in that most production employees are paid on a "gang time" basis, wear some kind of PPE, and use knives in their work. This is a sufficient factual basis that similarly situated plaintiffs exist, assuming that the collective action is limited to those production employees paid on the "gang time" system.

Upon the foregoing,

**IT IS ORDERED** that plaintiffs' motion for conditional certification of the following collective action is granted:

> All current and former employees of Tyson's Columbus Junction, Iowa, processing facility who have been employed at any time from September 13, 2004, to the present, and who are or were paid under a "gang time" compensation system.

Because the court's collective action differs from that urged by plaintiffs, plaintiffs shall file a revised proposed notice, consistent with this order, by **November 19, 2008.** Plaintiffs shall also e-mail their proposed notice to the court at *John—Jarvey@iasd.uscourts.gov.* Defendant shall file its response to plaintiffs' proposed notice by **November 26, 2008,** after which the court will finalize the notice. By **December 12, 2008,** defendant shall provide to plaintiffs' counsel a list of the names and addresses of all individuals that meet the

court's definition of the FLSA collective action.